**FORD v EISENBERGER et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1517.   Decided March 1, 1939

Clifford Curtner, Dayton, Sigler & Denlinger, Dayton, for appellant.
Froug & Froug, Dayton, for appellee.

**OPINION**

By GEIGER, J.

This case is before this Court on errors of law alleged to have occurred in the Court below.

The amended petition alleges that the Dayton Arcade Company is a corporation and owns and operates an Arcade Building in the City of Dayton, Ohio; that the defendant Sidney Eisenberger is the Receiver of such corporation; that Frank S. Rudy operates a market stand in the Arcade Building of the defendant, the Dayton Arcade Company.

For a cause of action the plaintiff alleges that on the 25th day of September, 1936, she entered the building of the defendant for the purpose of mak-

ing purchases and was walking about in said Arcade and while proceeding through said Arcade, from north to south, through an aisleway commonly used by persons going through said Arcade as a public thoroughfare, and when she reached a point near what is known as Rudy's stand her foot came in contact with a large piece of cardboard which the defendants had caused and allowed to remain on said floor and as a result of this she stepped upon the cardboard, which caused her to slip and fall to the floor and as a result thereof she suffered injuries complained of. She prays judgment in the sum of $10,000.00.

Various motions were made by the several defendants, some of which were sustained and some overruled.

The Receiver, for his answer to the amended petition, as a first defense admits that he is such Receiver; denies that he caused a piece of cardboard to remain on the floor of the aisleway, denies that he was in control of the cardboard and aisleway at the time of the accident; denies that he was responsible to keep the aisleway free and unobstructed; denies all other allegations of the petition.

As a second defense, he alleges that any negligence in the premises chargeable to him, which he expressly denies, was caused wholly by the carlessness of the plaintiff in her failure to use ordinary care to observe the pathway upon which she was walking; that in the exercise of ordinary care she should have known the conditions of the premises and the accident and injuries been avoided.

Frank S. Rudy in answer to the amended petition denies all allegations not specifically admitted. He admits that he is a tenant in the Arcade Building and was operating a public stand on the date mentioned. He also alleges contributory negligence on part of plaintiff.

Upon a motion of the Receiver to require the plaintiff to elect as between the defendants, The Dayton Arcade Company and Sidney Eisenberger, the Receiver, the Court found that the Receiver was not only a proper party but

a necessary party but that the Court does not consider the Dayton Arcade Company a necessary party and for that reason the Court is not called upon to decide who is a proper party and overrules the motion and required the Receiver to plead. So far as the record goes the Dayton Arcade Company, as such, does not further appear as a party. It does appear on page 25 of the Record that the Arcade Company was dismissed by the Court as a party.

The plaintiff replied to the answers of the defendants denying all allegations.

The cause was submitted to a jury which returned a verdict in favor of the plaintiff against the defendants, Eisenberger, Receiver for the Arcade Company and Frank S. Rudy in the sum of $1500. The Record, page 185, shows that the jury returned their verdict against "the defendant" without naming such "defendant". That probably is an inadvertence as the signed verdict is against both defendants. A motion for judgment notwithstanding the verdict was filed by the Receiver and Rudy and also a motion for new trial, both of which were overruled. Judgment was rendered against the Receiver and Frank S. Rudy in the sum of $1500.

The defendant, Sidney Eisenberger, as Receiver, within the proper time gave notice of appeal to the Court of Appeals from the judgment rendered by the Common Pleas Court on the 13th day of April, 1938. Frank S. Rudy, defendant, also gave notice of appeal, although such notice is not included in the papers filed with the transcript of docket and journal entries and no entry has been made thereon of its filing. We will treat is as though it had been included with the papers attached to the transcript of docket and journal entries and an entry of its filing had been made thereon. If it is thought to be necessary that it be formally included and noted, a motion for diminution of the record will be entertained.

Defendant Sidney Eisenberger, Receiver, submits assignments of error covering eleven alleged errors and a

supporting brief. Defendant Frank S. Rudy submits nine assignments of error and a supporting brief.

Counsel for the Receiver has presented numerous authorities which have, in the main, been adopted by the defendant-appellant, Frank S. Rudy.

Without attempting to go into minute detail, we discover the following facts. The place where the accident occurred is designated as the Dayton Arcade Market. It begins at an alley running east and west between Third and Fourth Streets. North of the Arcade Market and leading directly into it, across the alley, is the Gibbons Arcade Lobby. The two Arcades form a convenient and much used passageway for the general public in passing from Third to Fourth Street and form a convenient shopping district for those purchasing either in the abutting store rooms or in the large general market, which occupies the larger portion of the Market Arcade. The approach to the Market Arcade from the north, is through two sets of double doors, the west set used by those going into the market from the north and the east by those leaving the market from the south. Directly south of the north entrance there is a broad aisleway of 18 feet on the east side of which are entrances into various shops. On the west side are permanent stands occupied by many different merchants for the sale of provisions. For many years it has been the custom to place temporary display stands or tables in the center of the aisleway running from the north door to the south door, which enters upon Fourth Street. These tables are the property of the Arcade Company and vary in length but are all of uniform width and height. The table tops are about two feet in width and are placed in the aisleway on Thursday, Friday and Saturday of each week and are mostly occupied by merchants who have permanent stands on the west side of the aisleway. The space allotted to these stands or tables is four feet and when in position there is left on each side an aisleway of about seven and one-half feet. Rental is charged

for the stands on a per diem basis. The aisleway on the west of the stands is used for customers, the merchants selling the goods being on the east side of the tables facing westward.

The floor of this Arcade is tiled and the Arcade Company for a number of years, in order to make the position of the merchants more comfortable and and to improve the appearance of the market, has furnished runners of rubber, 20 inches wide, which are laid flat on the floor not extending beyond the allotted four feet. At or about the time of the accident complained of, the merchant, Mr. Rudy was unable to find a suitable rubber runner and in order that he and his clerks might be relieved from the hard tile floor, he secured from a merchant a runner of mattress cardboard which he placed in position on the east side of the stand placing some boxes along the north end to keep the runner in position and to prevent the cardboard from getting out of position, and to protect the stand and the clerk from interference by pedestrians. It was the duty of the janitors, under the direction of the Receiver, to keep the spaces behind and under the temporary stands clean and free from discarded material. They performed this duty twice during the day and once at night. The lessees of the stands had nothing to do with keeping the spaces clear of empty boxes and discarded material.

It appears that the accident occurred on Friday, the 25th of September, 1936, and that the cardboard was placed in position by the defendant, Rudy, on Thursday, the 24th, and we may therefore assume that the janitors working for the Receiver had knowledge of the cardboard and the Receiver's agent, Mr. Stewart, states that he knew of the existence of the cardboard. On the Day of the accident the plaintiff, who was a social worker for one of the charity organizations of the city, alighted from a car in front of the Gibbons Arcade and entered that Arcade for the purpose of going through to Fourth Street in order to reach the office at which she was employed. She states that she made a pur-

chase in the Gibbons Arcade of some peanuts and then proceeded southward entering the west door or the Dayton Market Arcade. The north end of Mr. Rudy's stand was about 20 feet from the north doorway. After the plaintiff had proceeded southward for from ten to twelve feet she turned to her left intending to proceed down the east seven foot aisleway. In doing so she came close to the north end of Rudy's stand and as she passed around the north east corner of his stand her foot caught on some obstruction which threw her to the floor. After she had fallen she looked to discover what she had tripped against and states that she did not see any boxes stacked at the north end of the stand but that she saw the cardboard with the end turned up and that there was no other obstruction against which her foot could have struck. She also states that she might have made a purchase of fruit in the Market Arcade but fell before she did so. She states that the reason she turned from the west aisleway was that there was quite a crowding of customers on the west aisleway and that she sought the east aisleway in order to have more free passageway southward. She states that she was about a foot from the north end of Mr. Rudy's stand when she turned to the left to go to McCrorys' rear entrance on the east side of the east aisle.

It will be observed that in the petition she alleges that she slipped and was thrown to the floor. whereas her testimony is to the effect that she tripped on the obstructing cardboard. She was closely questioned as to whether her theory of what threw her to the floor was an after consideration or whether she saw the obstruction. She testifies that she did not see it until after she had been thrown when she looked back and discovered the cardboard with no other obstruction which could have caused her fall. The testimony of the plaintiff is somewhat confused at times which may be well accounted for by the length and severity of her cross-examination. She, however, is clear in her statement as to what she considered as the cause of her fall.

Evidence is introduced as to the appointment of the defendant, Eisenberger, the order of the court being to the effect that he was to have control of the market and was to rent and lease the market spaces and collect the rent. The Receiver also testified that as a receiver he was interested in the prosperity of the market people and that the more people that came through the market the more possibility there was for them to make sales. He admits the fact that for a number of years it was customary for the Receiver, at his own expense and through his own janitors, to place the flat rubber mats over the floor east of the temporary stands for the convenience and protection of the clerks. It appears that the reason the cardboard mat was used on the day in question was that there had been a theft of some mats and there were not sufficient to go around for all stands and that therefore Rudy secured the cardboard. The Receiver denies that he was under any obligation to furnish the mats but states that the same had been furnished for the purposes mentioned for a number of years.

With this resume of the evidence, we may consider the pertinent legal questions raised by counsel for defendant, some of which may be easily disposed of and others of which are more difficult. We shall not take them up in the order in which they appear in the assignment of errors but rather in what appears to be a more logical disposition, in consideration of the difficulties incident to their determination.

The first assignment is that the court erred in overruling motion of Receiver for judgment non obstante veredicto and in overruling the motions for directed verdict. Like motions were submitted by Rudy. The grounds asserted by the defendant Receiver for directed verdict were that there was no negligence proven against the defendant and no evidence that he was in control of the area of the passageway occupied by the stands at the time the accident oc-

curred and that he did not place the cardboard and that contributory negligence was shown and other grounds. Like grounds are asserted by Rudy. Under the state of the evidence we are of the opinion that the Court did not err in overruling both motions for instructed verdict and for judgment non obstante.

Error is alleged in the refusal of the Court to charge the fourth requested charge submitted by defendant Receiver. The Court charged three of the special charges which were largely devoted to the question of the plaintiff's negligence or contributory negligence. The fourth charge requested and refused was to the effect that if the plaintiff was merely using the north and south aisleway, running on the east side of the Arcade Market, for her own convenience that the defendant Receiver was not liable unless it was found that he wilfully and wantonly exposed the plaintiff to dangers in the aisleway. This charge was based upon the defendant's interpretation of the law as to whether or not plaintiff in passing through the Arcade was an invitee or licensee. We are of the opinion that the use to which the passageway had long been dedicated was for the purpose of attracting more people to the Arcade in order to promote sales of the merchants and that the plaintiff was an invitee and not merely a licensee and that the evidence was clear upon this point and that therefore the Court did not err in refusing to give defendant, Receiver's fourth charge. The giving of such charge would have led to confusion and the evidence did not justify it.

Another allegation of error related to the introduction and admission of evidence. We find no prejudicial error in any such action of the Court.

The further errors assigned are the action of the trial court in the conduct of the trial and misconduct of counsel for plaintiff preventing a fair and impartial trial. In reading the record, it is easy to determine that this trial was hotly contested and that there were moments when counsel and Court were probably in sharp conflict. Counsel devotes considerable attention to this matter, but we are of the opinion that what ever objections might have been raised were amply cured by the Court in his charge to the jury and that Court had no part in the determination of the facts and that if the Court had in any way indicated his view as to the facts that the jury should not consider the same.

Some objection, under that grouping of errors, is taken to the inquiries addressed to the jury with reference to being stockholders or employees in an insurance company. This occurred with two or three of the jurors but no objections were made in open court, but out of the hearing of the jury counsel stated that he objected to the undue emphasis on insurance and objected to the statement to which the Court replied that counsel did not object in the presence of the Court and the jury but attempted to inject an objection into the record of statements made by counsel and the Court ordered that the objection be stricken from the record. After that colloquy, out of the hearing of the jury, a further juror on voir dire was asked whether he or any member of his family had any stock in an insurance company. No objections were made to this nor to the examination on the same point of a lady juror. We are of the opinion that the examination in this case did not violate the rule last announced by the Supreme Court on this question and this ground of error will be overruled.

The defendants complain that the plaintiff was guilty of contributory negligence in that she did not use her senses to avoid the obstruction. We feel that the court in his charges, both special and general covered this point so that there could be no misunderstanding on the part of the jury as to what would constitute contributory negligence and prevent a recovery. The jury evidently came to the conclusion that the plaintiff was not negligent or that

her negligence did not contribute to the injury. With the charge on this point and the conclusion of the jury we have no quarrel. The charge was ample, and clear and the conclusion of the jury was justified by the evidence summitted.

A more serious question is presented in the Fifth Assignment of Error of the Receiver touching errors of the trial court in failing to separately define and charge on all the issues presented by the pleadings and evidence. This alleged error is repeated in the Fifth Assignment by the defendant Rudy. No special charges were requested by either defendant upon this question and if the Court's charge is only an error of omission it can not be urged. If, however, it is an error of commission it falls within the errors reserved in general exceptions to the Court's charge. The Court charged, Record 178-179,

"If you find that the agents, servants or employees of the defendants or one of them in the performance of their duty as such employee and agent of the defendants in such respects as charged in the plaintiff's petition, some one any or all of them, and that negligence was the proximate cause of the plaintiff's damages and that the plaintiff was himself in the exercise of ordinary care and free from negligence, then your verdict should be for the plaintiff. If you find by a preponderance of the evidence that the injuries complained of by the plaintiff were directly and proximately caused by the negligence of the defendants or either one of them, in the respects set forth, in the Amended Petition, someone any or all of them, and that the plaintiff was at the time in the exercise of ordinary care, your verdict in that event, will be for the plaintiff and against such defendant or defendants as you so find."

The amended petition alleges that the defendants were jointly in control and had charge of the floor where the plaintiff fell and were jointly responsible to keep the aisleway free and unobstructed and that said defendants, by their joint acts, failed so to do and permitted the placing on said floor the obstruction which caused said plaintiff to fall.

It is evident from the testimony that the landlord, who was the Receiver of the Company, leased certain spaces to the several market people, including the defendant; that these spaces were of a definite size and location, being in length that which was requested by the market people and in width four feet. A landlord is not deemed the principal of his tenant nor responsible for his torts, active or negligent, or for his failure to keep the premises in repair and is not liable to a person injured by a source of danger created by the tenant without the license or consent of the landlord. The question of liability as between landlord and tenant has given rise to many controversies and much legal lore. We will briefly examine the authorities as they seem to relate to the testimony offered in this case.

"In the case of injuries to a third person resulting from a condition or use of leased premises, it is the general rule that prima facie the breach of duty, and therefore the liability is that of the occupant and not of the landlord * * * ." 16 R.C.L., Page 1063, Section 584.

"Nor is the landlord responsible to persons injured on the leased premises by reason of his tenant's negligence or improper use of such premises." 16 R.C.L., Page 1070, Section 590.

But it has been held the lessor of a concession to conduct a business to which the public is invited is liable for injuries resulting from the negligence of the lessee, if he retains control and supervision of the premises or receives a proportion of the profits of the concession, but the lessor is not liable unless he retains control. R.C.L., Permanent Supplement, Page 4191. See the

interesting Ohio cases of **Shindelbeck v Moon** 32 Oh St 264; **Burdick v Cheadle,** 26 Oh St 393; **Stackhouse v Close,** 83 Oh St 339 at page 351.

There is evidence in this case tending to show that the landlord retained control of the passageway upon which the temporary stands were placed, but the evidence is not conclusive upon the point as to whether the offending cardboard, at the point where the plaintiff claims to have tripped, extended beyond the space rented to Rudy into the space exclusively within the control of the landlord. The rule controlling in such a case is stated as follows:

"A landlord may however where renting premises, reserve certain parts thereof for his own use and retain them under his own control, and where this is the case the responsibility rests with him to see that no injury results either to his tenant or other persons having rights there as servants, guests or customers of the tenant, by reason of the manner in which such portion of the premises is occupied or used." **Davies v Kelly, 112 Oh St 122; 16 R. C. L. p. 1071,** Sec. 591.

From a perusal of these authorities, it is evident that a court charging the jury can not correctly inform them of the issues and of the liability of the landlord or tenant without charging as to the law on all the facts that may be disclosed by the evidence. The landlord may be solely responsible under certain conditions, the tenant under other conditions and both may be jointly liable under another set of facts, and it will not do for the court to submit the matter to the jury without such direction as may be appropriate.

We are of the opinion that the charge of the Court above set out is prejudicially erroneous in that the jury was instructed, in substance, that the negligence of each, however shown, is the negligence to be attributed to the co-defendant and would justify a verdict against both. An act that might be negligence upon the part of the tenant may not be negligence upon the part of the landlord and the landlord is not responsible for the negligence of the tenant unless there is a concurrence by each in the same negligence. It is true that the Court used the expression "your verdict in that event will be for the plaintiff and against such defendant or defendants as you so find." It is also true that there was submitted to the jury two forms of verdict which would permit the jury to find in favor of one defendant and against the other, but this is not sufficient to protect either defendant, if, as a matter of fact, one or the other may not have participated in or been responsible for the negligence which was a proximate cause of the injury. What is negligence solely upon the part of the tenant can not be attributed to the landlord and the converse is true. In our judgment the Court should have separately called the attention of the jury to the position of each, one as a tenant and the other as a landlord and appropriately charged in reference to each. It is true that the theory of the plaintiff was that the landlord having been accustomed to furnish the rubber mats that his failure to do so was negligence. This is not borne out by the evidence. Also it may be asserted that the laying of the objectionable mat was as much the act of the landlord as it was of the tenant or that the knowledge of the landlord that the tenant had used the cardboard mat and his acquiescence in it was sufficient to attribute the negligence of the tenant to the landlord. We do not believe this is a correct statement of the relative obligation of the tenant and the landlord.

The court below seemed to be under the impression that so long as the appointment of a receiver covered control of the property, that the Receiver was in complete control of the property. The Receiver was also authorized to rent the property and if he did rent the property he assumed the position of

a landlord and the law of landlord and tenant should control his liability.

As to proof of negligence required where one is injured on the premises without reference to the relation of landlord and tenant, see

Penny v Robinson, 128 Oh St 626.

Hamden Lodge v Gas Company, 127 Oh St 469.

Greyhound Lines v Martin, 127 Oh St 499.

Athletic Association v Bending 129 Oh St 152.

We are of the opinion that due to the erroneous charge of the Court on this matter that there was prejudicial error which requires us to reverse the court below.

Judgment reversed and cause remanded.

HORNBECK, PJ, and BARNES, J, concur.